**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA**

**ELLIOT JAMES OAKLEY,**

  **Petitioner,**

v.                                                                   **Case No. 18-CV-309-JFH-KEW**

**RICK WHITTEN,[1]**
*Warden*

  **Respondent.**

**OPINION AND ORDER**

This matter comes before the Court on a Petition for Writ of Habeas Corpus pursuant to 28

U.S.C. § 2254.  [Dkt. No. 1.]  Petitioner Elliot James Oakley ("Oakley") is a prisoner proceeding

*pro se*.  He is currently in the custody of the Oklahoma Department of Corrections ("ODOC") and

confined in the North Fork Correctional Center in Sayre, Oklahoma.  He challenges his conviction

and sentence in Seminole County District Court (Case No. CF-2014-254), for First Degree Murder.

Oakley pleaded guilty to the offense.  The trial court sentenced him to life imprisonment without

parole.  For the reasons set forth below, Oakley's Petition for Writ of Habeas Corpus [Dkt. No. 1]

is DENIED.

**FACTUAL BACKGROUND**

The Oklahoma Court of Criminal Appeals ("OCCA") summarized the facts of the

offense as follows:

---

[1]  Petitioner is incarcerated at the North Fork Correctional Center (NFCC).  At the time of filing
the petition, Petitioner was confined in the Lexington Assessment and Reception Center.  Pursuant
to Fed. R. Civ. P. 25(d), the Court therefore substitutes the NFCC's warden, Rick Whitten, in place
of the Lexington facility's former warden, Jerrold Braggs, Jr., as party respondent.  The Clerk of
Court shall note this substitution on the record.

In this case, Petitioner pled guilty to the first degree murder of Tyree McFadden. The State presented evidence at preliminary hearing showing Petitioner shot McFadden on June 28, 2014, during an argument with Petitioner's brother, Tony Oakley, outside a Seminole convenience store. According to an eyewitness, Jessica Johnson, the confrontation between Tony Oakley and McFadden was occurring when Petitioner pulled up in a car and shot McFadden in the chest with a single bullet fired from a handgun. McFadden ran away from the convenience store, was taken to a local hospital and subsequently died of his injuries. Another eyewitness, Veronica Harrison, placed Petitioner at the scene and testified he was fighting with McFadden. However, she did not see Petitioner with a gun. Nor did she see Petitioner actually shoot the victim.

Dkt. No. 14-12 at 2-3.

## PROCEDURAL HISTORY

On the advice of appointed counsel, Oakley entered a blind plea of guilty to First Degree Murder on August 20, 2015. Dkt. No. 14-1 at 1. With assistance from his attorneys, Oakley completed and signed, under penalty of perjury, a "Plea of Guilty/Summary of Facts" document, in which Oakley averred that he understood the nature and consequences of the plea proceeding, and that he was pleading guilty to First Degree Murder (after previous conviction of a felony) in exchange for dismissal of Count 2 of the information, Conspiracy to Commit a Felony. Oakley declared that he understood the maximum punishment for First Degree Murder was life imprisonment or life imprisonment without parole. He indicated that he understood his rights and understood that he waived his rights by entering the guilty plea. Dkt. No. 14-1 at 1-4. Oakley averred he discussed the charges with his lawyer and sought his lawyer's advice regarding pleading guilty. Oakley declared that he believed his lawyer had "effectively assisted" him in the case, and Oakley was satisfied with his lawyer's advice. Dkt. No. 14-1 at 4-5. Oakley affirmed that he had not been "forced, abused, mistreated, threatened, or promised anything by anyone" in exchange for his plea, and further that he pleaded guilty of his "own free will and without any coercion or compulsion of any kind." Dkt. No. 14-1 at 6.

The trial judge confirmed the written statements in a colloquy with Oakley at the plea hearing. Dkt. No. 15-3, transcript of plea hearing. Based on the statements made on the form, and the plea colloquy, the Court found Oakley: (1) "was sworn and responded to the questions under oath;" (2) "understands the nature, purpose and consequences of this proceeding;" (3) his "plea of guilty is knowingly and voluntarily entered and accepted by the court;" (4) "is competent for the purpose of this hearing;" and (5) "a factual basis exists for the plea." Dkt. No. 14-1, at 9.

Eight days later, on August 28, 2015, with assistance of counsel, Oakley filed an Application to Withdraw Guilty Plea. Dkt. No. 14-3. Attached to the application were letters written by Oakley to the trial judge and to counsel alleging that Officer Branon Bowen coerced him into entering a plea of guilty to save his brother, Tony, from prosecution. Dkt. No. 14-3. In response to the application to withdraw the plea, the Court appointed conflict counsel, Silas Lyman, to represent Oakley. Dkt. No. 14-4.

The State of Oklahoma filed a response arguing that Oakley should not be allowed to withdraw his plea because he entered into the plea knowingly and voluntarily. Dkt. No. 14-5. The trial court held a hearing on the application to withdraw the plea on December 22, 2015. Oakley, now represented by conflict counsel, Lyman, withdrew his application to withdraw the plea. Lyman informed the judge that Oakley's request to withdraw the motion to withdraw plea was procedural, and Oakley "would be able to retain the right to file an application to withdraw after sentencing." Dkt. No. 15-4 at 5. The trial court ordered the completion of a presentence investigation report and set the matter for sentencing. Dkt. No. 15-4. On April 26, 2016, the trial court sentenced Oakley to life imprisonment without parole. Dkt. No. 14-7; Dkt. No. 15-5.

On May 2, 2016, with assistance of conflict counsel, Oakley filed a second Application to Withdraw Guilty Plea. Dkt. No. 14-8. Oakley alleged his guilty plea was entered "through

inadvertence, ignorance, mistake or coercion." He alleged specifically that he entered the plea to protect his brother, Tony, from prosecution. He claimed that he was innocent of the charged offense and would not have entered the guilty plea but for the alleged coercion. Dkt. No. 14-8 at 2.

The trial court held a hearing on the application to withdraw plea on May 27, 2016. Dkt. No. 15-6. Oakley testified that his attorneys at the initial plea hearing told him if he went to trial, he would lose. He testified that he understood from them that his only option was to plead guilty. He also testified that he hoped that if he pled guilty, he might receive a suspended or "split" sentence. Dkt. No. 15-6 at 11.

Oakley further testified that Officer Branon Bowen spoke to him at the jail:

> Basically, he told me I need to talk to the DA and see what kind of offers he have on the table. If I don't stand up and take the case or whatever he will make sure my brother get plenty of time.

Dkt. No. 15-6 at 13. Oakley testified that he felt pressured by Bowen to plead guilty. Oakley further testified that despite his statements at the original plea hearing and the verifications on the plea documents, he made false statements at the original plea hearing. Dkt. No. 15-6 at 16. When asked whether there was anything else he wanted the court to know, Oakley stated:

> I feel like I should have had an option to withdraw my plea. Because for one I feel I was forced and pressured by basically my attorney, also Branon Bowen. And at that time I really wasn't thinking straight. Just thinking that I was trying to help out my brother and help him anyway that I can. Just give me a chance, I guess.

Dkt. No. 15-6 at 17.

On examination by the State of Oklahoma, Oakley testified that he was disappointed that the judge sentenced him to life imprisonment without parole. He had hoped for a suspended sentence and parole. Oakley testified, however, that he was planning to seek to withdraw his plea regardless of the sentence, to let the process "go through." Dkt. No. 15-6 at 23-24. Oakley testified

that he did not commit the offense, and the witnesses who testified against him at the preliminary

hearing were lying.  Dkt. No. 15-6 at 31-33.

Detective Branon Bowen also testified at the plea withdrawal hearing.  He recollected that

he spoke with Oakley at the jail when he was there taking buccal swabs from both Oakley and his

brother.  Bowen stated:

> [A]nd after we took the sample I asked Mr. Oakley, Elliot Oakley if he had spoke
> with his attorney.  He said that he had not.  I told him specifically I never made
> him, never told him to take any plea, to make any deal, to in fact I have got no
> authority to do that.  But I did tell him maybe his attorney and his brother's attorney
> should talk if he's got testimony that would clear his brother of the crime he was
> charged with.  I thought in all fairness that would be proper.  Through my
> investigation I found that Elliot Oakley was the shooter.  That he pulled the trigger
> that killed Tyree McFadden and his brother was present and had been charged with
> murder.

Dkt. No. 15-6 at 35.

Bowen denied stating anything to Oakley that was threatening or coercive.  Bowen testified

that his purpose was to inform Oakley that he could exonerate his brother.  Dkt. No. 15-6 at 36-

37.  Bowen also testified regarding the investigation of the murder.  He testified that Oakley's alibi

witness denied she was with Oakley the night of the murder.  Bowen was unaware of any other

alibi witnesses.  Dkt. No. 15-6 at 37-39.

Oakley's trial attorneys (father and son) both testified at the hearing regarding the

investigation of Oakley's case and their advice to Oakley regarding his plea of guilty.  Zachary

Pyron testified that he investigated both of Oakley's potential alibi witnesses:  one denied being

with him the night of the offense, the other could not be located because Oakley provided his

attorneys only the man's nickname and that he had moved to California.  Both Zachary and Rob

Pyron testified that they fully advised Oakley of his right to go to trial if he wished, and they did

not in any way coerce his guilty plea. Dkt. No. 15-6 at 48-77.

At the close of the hearing, after oral argument from both Oakley's counsel, Lyman, and the State of Oklahoma, the trial court announced its decision:

> This Court normally doesn't issue its ruling from the bench initially because it wants to review all of the documents, the transcripts, and all of the matters that come up in these matters. But in this case this Court having reviewed the transcripts on at least four previous occasions, having dealt with co-defendants, etcetera. I can almost verbatim quote the Preliminary Hearing transcript and the plea of guilty. Therefore, this Court finds and has been convinced and confirms this plea was knowingly, intelligently, competently, and voluntarily entered by the Defendant. And his allegations of inadvertence, ignorance, mistake, or coercion that burden in reference to those matters has not been met. This Court denies the application to withdraw the plea of guilty.

Dkt. No. 15-6 at 80-81.

The trial court also issued a written order Dkt. No. 14-10. Relevant to this habeas petition, the trial court made the following findings:

1.    Oakley was "competent in all respects."

2.    Oakley understood the range of punishment for Murder in the First Degree.

3.    Oakley was "fully aware and understood the consequences of his plea" as demonstrated in the plea document.

4.    Oakley "understood each of his rights" and reviewed them with his counsel.

5.    Oakley "alleged that he entered his plea to protect his brother from prosecution by the State of Oklahoma and that he was coerced to enter his plea."

6.    Oakley "maintains his innocence and but for the circumstances surrounding his plea he believes that he would not have entered his plea of guilty."

7.    Oakley "testified in open court as well as indicated on the Plea of Guilty/Summary of Facts that no one, except maybe Police Officer Bowen, had forced him, abused him, mistreated him, threatened him or promised him anything to have him enter his plea and that he was entering the Plea of Guilty of his own free will and without any coercion or compulsion of any kind."

8.    Based upon the testimony of Oakley and Officer Bowen, the trial court found "the allegations that Police Officer Bowen coerced the Defendant by his actions and statements are without merit."

6

9.    Oakley "can point to no valid witnesses or valid facts to support any defense to the crime of murder in the first degree."

10.   Oakley "has failed to prove his allegations that his Plea of Guilty to the crime of murder in the first degree was entered through coercion, inadvertence, ignorance or mistake."

11.   At the plea hearing, the trial court "confirmed that the plea of guilty was knowingly, intelligently, competently and voluntarily entered by the Defendant by its examination of the document, its questioning of the Defendant, its observation of the Defendant and the totality of the circumstances."

12.   The trial court denied Oakley's Application to Withdraw Guilty Plea.

Dkt. No. 14-10 at 4-7.

With assistance of counsel, Oakley sought a writ of certiorari in the Oklahoma Court of Criminal Appeals ("OCCA"). Oakley argued, first, that his plea was not voluntary because he was coerced into pleading guilty by Officer Bowen and his attorneys. Second, Oakley argued that his court-appointed conflict counsel should have been a witness at the plea withdrawal hearing instead of acting as an advocate, which created a conflict of interest. Dkt. No. 14-11.

The OCCA issued its opinion denying Oakley's petition for writ of certiorari on August 24, 2017. The OCCA reviewed the validity of Oakley's plea under the "knowing and voluntary" standard set forth in *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). The appellate court determined that the state's evidence against Oakley—which included two eyewitnesses and no credible evidence to support an alibi—was strong. Nor did the record support Oakley's claims that he was coerced by Officer Bowen or his plea counsel. The OCCA found that Oakley was fully informed of the consequences of entering a blind plea, and that his plea "was knowingly and voluntarily entered." The court reasoned:

> At bottom, Petitioner's argument boils down to his belief that he should be allowed to withdraw his plea because he did not get the sentence he wanted. This is an insufficient basis upon which to withdraw his plea.

The OCCA concluded, therefore, that the trial court did not abuse its discretion in denying Oakley's application to withdraw his plea. Dkt. No. 14-12 at 15-16.

The OCCA further found no merit to Oakley's allegations of a conflict of interest by appointed conflict counsel. The court determined that a criminal defendant is entitled to effective assistance of counsel at a hearing on a motion to withdraw a guilty plea, citing *Carey v. State*, 902 P.2d 1116, 1117 (Okla. Crim. App. 1995). The OCCA found, however, that at most Oakley had shown only the appearance or possibility of a conflict of interest, which was not sufficient to support overturning the trial court's ruling. The OCCA found, further, that conflict counsel's arguments regarding Petitioner's application to withdraw his guilty plea bore "all the hallmarks of advocacy, not witness testimony." Ultimately, the OCCA found "no basis in this record for finding conflict counsel ineffective." Dkt. No. 14-12 at 17-19.

Oakley filed his Petition for Writ of Habeas Corpus in this Court on August 9, 2018. He raised two habeas claims:

I.     Oakley's guilty plea was not voluntary because he was coerced into pleading guilty.

II.    Oakley received ineffective assistance of counsel at the plea withdrawal hearing.

Dkt. No. 1 at 2-4.

The State of Oklahoma filed a response to Oakley's habeas petition. The State conceded that Oakley's petition was timely, and he properly exhausted his state court remedies, but he was not entitled to habeas corpus relief. Dkt. No. 10.

## LEGAL STANDARDS

Under 28 U.S.C. § 2254, federal district courts have jurisdiction to hear claims from state prisoners that their convictions were obtained in violation of the United States Constitution. A petition for writ of habeas corpus will be granted only if the state court's adjudication of the claim:

8

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254 (d).

A habeas court will first analyze whether federal law "was clearly established by the Supreme Court at the time of the state court judgment." *Byrd v. Workman*, 645 F.3d 1159, 1165 (10th Cir. 2011). A state court's judgment is "contrary to" federal law where "the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Court has on a set of materially indistinguishable facts." *Id.* (citing *Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004)). An unreasonable application of federal law occurs where the state court identifies the proper controlling legal principle but "unreasonably applies" the law to the facts of the defendant's case. *Id.*

## DISCUSSION AND ANALYSIS

I.     **Ground I:  The OCCA's determination that Oakley's guilty plea was entered into knowingly and voluntarily was not contrary to or an unreasonable application of federal law.**

In Ground I of his Petition for Writ of Habeas Corpus, Oakley contends that his guilty plea was involuntary because he was coerced into pleading guilty. Dkt. No. 1 at 3. Oakley contends specifically that his attorneys told him he would lose at trial, but if he entered the blind plea he would receive a suspended sentence. Oakley asserts that he did not commit the crime, and "it was a mistake" to plead guilty. Oakley further contends that based upon Officer Bowen's threats, his plea of guilty was an attempt to help his brother, Tony, from receiving punishment.

A federal court reviews habeas challenges to guilty pleas for violations of due process. Under habeas review, a plea of guilty must comport with due process because basic constitutional

9

rights are waived, including the privilege against self-incrimination; the right to a trial by jury; and the right to confront one's accusers. *See Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969). Accordingly, a plea of guilty and its attendant waiver of rights must be entered into knowingly and voluntarily. *See Brady v. United States*, 397 U.S. 742, 748-49. A federal court will uphold a guilty plea made in state court "if the circumstances demonstrate that the defendant understood the nature and the consequences of the charges against him and that the defendant voluntarily chose to plead guilty." *Miles v. Dorsey*, 61 F.3d 1459, 1466 (10th Cir. 1995) (citing *Boykin*, 395 U.S. at 242-44). The waiver of constitutional rights must be an "intelligent act[] done with sufficient awareness of the relevant circumstances and likely consequences." *Brady*, 397 U.S. at 749. A knowing plea is "the product of a deliberate, intelligent choice." *Cunningham v. Diesslin*, 92 F.3d 1054, 1060 (10th Cir. 1996) (citing *Parke v. Raley*, 506 U.S. 20, 28 (1992)). A criminal defendant must also fully understand "what the plea connotes and . . . its consequences." *Cunningham*, 92 F.3d at 1060 (quoting *Boykin*, 395 U.S. at 244).

> [A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).

*Brady*, 397 U.S. 742, 755 (citations omitted).

A criminal defendant may simultaneously maintain his innocence and plead guilty so long as there is a strong factual basis for the plea. *See North Carolina v. Alford*, 400 U.S. 25, 38 (1970).

A trial counsel's inaccurate predictions of the sentence a defendant might receive do not render a guilty plea invalid. *Bush v. Neet*, 400 F.3d 849, 852 (10th Cir. 2005). "An erroneous sentence estimate by defense counsel does not render a plea involuntary. And a defendant's erroneous expectation based on his attorney's erroneous estimate, likewise does not render a plea

10

involuntary." *Fields v. Gibson*, 277 F.3d 1203, 1214 (10th Cir. 2002) (quoting *Wellnitz v. Page*, 420 F.2d 935, 936-37 (10th Cir. 1970)). Nor does defense counsel's advice, or even "strong urging," invalidate a guilty plea. *Fields*, 277 F.3d at 1214 (quoting *Williams v. Chrans*, 945 F.2d 926, 933 (7th Cir. 1991)). *See also Miles*, 61 F.3d at 1470 (attorney's attempt to persuade defendant that it is in his best interest to plead guilty does not render plea involuntary).

A habeas petitioner's own sworn statements that his plea was knowing and voluntary "constitute a formidable barrier in any subsequent collateral proceedings." *Romero v. Tansy*, 46 F.3d 1024, 1033 (10th Cir. 1995) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). *See also Bush v. Neet*, 400 F.3d 849, 852 (10th Cir. 2005) (quoting *Blackledge*, 431 U.S. at 74) ("Solemn declarations in open court carry a strong presumption of verity.").

As an initial matter, this Court notes that the OCCA's nineteen-page opinion thoroughly discussed the procedural facts of the entry of the plea, the application to withdraw the plea, and the actions and statements of the original attorneys, Officer Bowen, and conflict counsel Lyman. Oakley's trial attorneys testified that they informed Oakley of their belief that he was more likely to receive a lesser sentence with a blind plea of guilty than by going to trial. The attorneys testified they told Oakley they would take his case to trial if he insisted, but based upon the strength of evidence against him and an uncorroborated alibi, they suggested that a guilty plea was in Oakley's best interest. Officer Bowen testified that he conversed with Oakley at the jail and suggested that Oakley consult his attorneys regarding the charges against his brother, Tony. Bowen testified that his statements to Oakley were advisory and not coercive.

The trial court also heard Oakley's testimony regarding his desire to withdraw his plea and compared it to the averments Oakley made at the plea hearing. The trial court spent a great deal of time at the plea hearing to ensure that Oakley's plea was knowing and voluntary. The judge

confirmed that Oakley had reviewed in detail the plea documents with his attorney and entered

into a detailed colloquy with Oakley in which he confirmed that Oakley understood the rights he

was giving up by pleading guilty, that he entered into the plea agreement freely of his own will,

without coercion, and that he fully understood the consequences of his plea of guilty to first-degree

murder.

Then, at the plea withdrawal hearing, the trial court heard extensive testimony from Oakley

himself regarding his feelings of coercion in entering his plea.  On the basis of the colloquy at the

plea hearing, the testimony of Oakley, his attorneys, and Officer Bowen; in addition to the trial

court's familiarity with the case, the court determined that Oakley was not coerced into entering

his plea.  It was within the sound discretion of the trial court to credit the testimony of Bowen and

Oakley's attorneys over that of Oakley.  Accordingly, the trial judge evaluated that testimony and

determined Oakley's plea was not coerced and that there existed a sufficient factual basis for the

plea.

On appeal of the trial court's order denying withdrawal of the plea, the OCCA adopted the

trial court's factual findings and found that the evidence against Oakley was strong.  The OCCA

also found no basis in the record to support a finding that Officer Bowen threatened or coerced

Oakley and no basis that he was coerced by his attorneys.

Oakley's own statements at the plea hearing that he understood the consequences of his

plea and that he entered into the plea agreement voluntarily undermine his later statements of

coercion.  Oakley's sworn statements at the plea hearing are a "formidable barrier" to habeas relief.

*Romero*, 46 F.3d at 1033.

Oakley's other assertions do not demonstrate actionable constitutional violations.  An

attorney's inaccurate prediction of a trial judge's sentence does not render void an otherwise

12

constitutional guilty plea, nor does an attorney's strong urging, which falls short of coercion, to

accept a plea.  The determinations made by the OCCA fall into these categories, none of which

support a finding that Oakley's plea was not knowing and voluntary.  Therefore, on the basis of

Oakley's own statements at the plea hearing, the strong evidence against him, and the lack of

evidence of coercion or threat, this Court cannot find that the OCCA's decision was contrary to or

an unreasonable application of federal law.  Accordingly, Ground I of Oakley's habeas petition is

DENIED.

II.      **Ground II:  The OCCA's determination that there was no conflict of interest in trial counsel's representation of Oakley at the plea withdrawal hearing was not contrary to or an unreasonable application of federal law.**

In Ground II of his habeas petition, Oakley argues that his court-appointed attorney had a

conflict of interest which amounted to ineffective assistance of counsel guaranteed under the Sixth

Amendment.  Oakley contends, specifically, that at the plea withdrawal hearing his attorney, Silas

Lyman, attempted to explain to the judge why the first application to withdraw plea was itself

withdrawn.  Oakley argues that "Mr. Lyman had a conflict because he should have been a proper

witness and should not have acted as an advocate at the hearing on May 27, 2015."  Oakley alleges

that counsel's conflict of interest "caused the Petitioner harm at the hearing."  [Dkt. No. 1-1 at 17.]

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-

pronged standard for analyzing claims of ineffective assistance of counsel on habeas review.  First,

the defendant must demonstrate his attorney's performance was deficient.  Second, the defendant

must demonstrate the alleged deficient performance prejudiced his defense.  *Id.* at 687.  In the

context of habeas challenges to a guilty plea, a petitioner must show that his attorney's

performance "fell below an objective standard of reasonableness."  *Fields v. Gibson*, 277 F.3d

1203, 1215 (10th Cir. 2002) (quoting *Hill v. Lockhart*, 474 U.S. 52, 57 (1985)).  A petitioner must

also demonstrate that "counsel's unconstitutionally ineffective performance affected the outcome of the plea process." *United States v. Carr*, 80 F.3d 413, 417-18 (10th Cir. 1996) (citing *Hill*, 474 U.S. at 59). Stated another way, a habeas petitioner must show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Fields*, 277 F.3d at 1215 (quoting *Hill*, 474 U.S. at 59). The Tenth Circuit Court of Appeals has held that a defense attorney's faulty prediction of a judge's sentence after a guilty plea does not constitute ineffective assistance of counsel. *See Fields*, 277 F.3d at 1216.

Encompassed in the Sixth Amendment right to counsel "is a correlative right to representation that is free from conflicts of interest." *Wood v. Georgia*, 450 U.S. 261, 271 (1981) (citing *Cuyler v. Sullivan*, 446 U.S. 335 (1980)); *Holloway v. Arkansas*, 435 U.S. 475, 481 (1978)). The mere "possibility of conflict of interest is insufficient to impugn a criminal conviction." *Cuyler*, 446 U.S. at 350. A criminal defendant must show an "actual conflict of interest . . . that affected counsel's performance." *Mickens v. Taylor*, 535 U.S. 162, 171 (2002).

The OCCA held that Oakley showed, at best, a "mere appearance or possibility of a conflict of interest." [Dkt. No. 14-12 at 18.] The OCCA further held that Oakley had demonstrated no prejudice to his defense.

This Court's extensive review of the record reveals that Oakley has demonstrated no prejudice to his defense resulting from any conduct of his counsel. Whether based on a theory incompetence or a conflict of interest, he cannot make a Sixth Amendment claim of ineffective assistance of counsel without a showing of prejudice against the defense. Although Oakley is unhappy with the outcome of his sentencing, he has not shown how he was harmed by the actions or conflicts of his counsel. At the first hearing plea withdrawal hearing, conflict counsel explained to the judge that Oakley was withdrawing his application to withdraw the plea as a procedural

matter and would later refile it, after sentencing, to comport with Oklahoma procedural custom. This is exactly what occurred.  The motion to withdraw the plea was withdrawn; a pre-sentence investigation report was completed; Oakley was sentenced.  Within the appropriate amount of time, Oakley filed a motion to withdraw the plea on the basis that his original counsel and Officer Bowen coerced him into pleading guilty.  The OCCA determined that attorney Lyman's argument explaining why the first motion to withdraw the plea was itself withdrawn bore "all the hallmarks of advocacy, not witness testimony."  As a result, the OCCA found "no basis in this record for finding conflict counsel ineffective."  The appellate court found that conflict counsel's actions were "imminently reasonable," and, therefore, did not constitute ineffective assistance of counsel.

This Court finds that the OCCA's holding was neither contrary to nor an unreasonable application of federal law.  Oakley has made no showing on either *Strickland* prong.  Although he wished for a lesser sentence, he has provided no evidence or argument that would support a conflict of interest on the part of Attorney Lyman.  Moreover, Oakley has not shown any act by Lyman that "fell below an objective standard of reasonableness," nor has he demonstrated how he was prejudiced by any action of his attorney.  Accordingly, Ground II of Oakley's habeas petition is DENIED.

**CONCLUSION**

In summary, Petitioner Elliott James Oakley has not shown that he is in custody in violation of the Constitution.  The Court therefore DENIES Oakley's Petition for Writ of Habeas Corpus [Dkt. No. 1].  Further, because Oakley has not shown that reasonable jurists would debate this Court's assessment of his constitutional claims, the Court DENIES a certificate of appealability.

THEREFORE, IT IS HEREBY ORDERED that:

1. The Clerk of Court shall note on the record the substitution of Rick Whitten in place of Jerrold Braggs, Jr. as party respondent;

15

2.  The Petition for Writ of Habeas Corpus [Dkt. No. 1] is DENIED;

3.  A certificate of appealability is DENIED; and

4.  A separate judgment shall be entered in this matter.

Dated this 27th day of July 2022.

_____

JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE